IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ARMENTERO, | Case No. 2:08-cv-01716-MSB |
| Plaintiff, | **ORDER** |
| vs. | |
| D.K. SISTO, Warden, et al., | |
| Defendants. | |

This case was reassigned to the undersigned judge. (Dkt. #14). Plaintiff Luis Armentero, who is currently confined in the California Medical Facility in Vacaville, CA ("CMF-Vacaville"), has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. (Dkt. #1). After reviewing Armentero's Application to Proceed *In Forma Pauperis* and screening Armentero's Complaint pursuant to 28 U.S.C. § 1915A, the Court will grant Armentero's request to proceed *in forma pauperis*, order Defendant Traquina to answer Armentero's First Amendment retaliation claim, and dismiss the remaining claims and defendants without prejudice.

**I.    Application to Proceed In Forma Pauperis & Filing Fee**

Armentero requests leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Dkt. #10). He has made the showing required by § 1915(a)(1),(2) and his request to proceed *in forma pauperis* will be granted. Pursuant to 28 U.S.C. § 1915(b)(1), Armentero is obligated to pay the statutory filing fee of $350.00 for this action. An initial partial filing fee

will not be assessed (due to Plaintiff's average monthly deposit of $0.00). He is required to make monthly payments of twenty percent of the preceding month's income credited to Armentero's trust account. By separate order, the Court will direct the California Department of Corrections to collect these payments and forward them to the Clerk of the Court each time the amount in Armentero's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. 1915(b).

**II.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

**III.   Background**

In July 2007, while housed at California State Prison Solano ("CSP-Solano"), Armentero was assigned by the Unit Classification Committee (UCC) to attend Adult Basic Education (ABE-1.115). (Dkt. #1 at 14). Armentero contends that this assignment violated a previous determination that he was "medically unassigned" from any work assignments by reason of arthritis in his knees. (*Id.*). He claims that the assignment, and the subsequent denials of his appeals to recognize his medically unassigned status, violated the Eighth and Fourteenth Amendments. (*Id.* at 13).

Armentero alleges that Defendant Navarro, his Correctional Counselor, Defendant Long, a Unit Classification Supervisor, and the UCC were "the initiators of violates [sic] of plaintiff's constitutional rights." (*Id.*). Armentero also alleges that Navarro ignored documentation of his medically unassigned status, a CDC Form 7410 - Comprehensive Accommodation Chrono. (*Id.*). That form, which is attached to the complaint, was filled out in 2005, shortly before Armentero was transferred from North Kern State Prison to Folsom State Prison. (*Id.*, Exh. B).

     Armentero further alleges that Defendant Ingrao, the ABE-1.115 instructor, repeatedly attempted to compel him to attend his class assignment, and eventually wrote disciplinary notices for Armentero's failure to report to his assignment. (*Id.* at 17). Armentero further alleges that Defendant Fries, a Correctional Officer working in his dormitory, falsely informed Ingrao that Armentero had no authorization to be absent from his assignment. (*Id.*). As a result, on August 6, 2007, when Armentero attempted to walk up the hill to the prison school to speak with Ingrao, he fell due to pain from his arthritis and injured his knee. (*Id.* at 18).

     Armentero was subsequently examined by Defendant Rohrer. Dr. Rohrer prescribed pain medication, a knee sleeve, and a cane, but refused to recognize Armentero's medically unassigned status, stating that the CDC 7410 was no longer valid. (*Id.* at 19). Dr. Rohrer also filled out an accommodation form indicating that Armentero would need a low bunk and the use of a cane. (*Id.*, Exh. B). Then, on September 25, 2007, Armentero had a medical interview with Defendant Traquina, the Chief Medical Officer. (*Id.* at 20). Dr. Traquina's examination revealed "no deformities and . . . full range of motion with some tenderness," and found that Armentero tested "negative for rheumatoid arthritis." (*Id.*, Exh. C). Nonetheless, because Armentero displayed some difficulty walking, Dr. Traquina recommended that Armentero be transferred to a facility that could provide level terrain, a low bunk, and no stairs. (*Id.*).

     Dissatisfied that Defendants Roher and Traquina had not recognized his medically unassigned status, Armentero filed a grievance. On October 31, 2007, Armentero was interviewed by Defendant Noriega as part of a first level appeal. (*Id.* at 30). Armentero alleges that only Dr. Noreiga "failed to grant plaintiff's appeal" during this interview. (*Id.*). He also alleges that Dr. Noriega had previously denied his medically unassigned status in the Spring of 2007. (*Id.* at 31). This denial is attached to the complaint and notes that Armentero was evaluated by a doctor on May 3, 2007, who found that he did "not meet the criteria of being mobility impaired under the ADA," and did not "need to be medically unassigned" at the time. (*Id.*, Exh. D).

1  Armentero goes on to allege that Dr. Traquina's recommendation of transfer was
2  made in retaliation for appeals he had filed. He alleges that he had originally been
3  transferred from Folsom State Prison to CSP-Solano precisely because he required relatively
4  level terrain, a low bunk, and no stairs. (*Id.* at 22). He alleges that CMF-Vacaville is a more
5  restrictive facility. (*Id.*)

6  On September 20, 2007, Defendant Primm adjudicated Armentero's disciplinary
7  notices for failure to report to his class assignment. Armentero was found guilty, although
8  he alleges that he produced documentation to support his medically unassigned status. (*Id.*
9  at 25). Armentero appealed the discipline and was interviewed by Defendant Delapp at the
10 first level of his appeal. (*Id.* at 29). Defendant Scavetta responded to Armentero's appeal,
11 indicating that Delapp reported that Armentero had no additional documentation supporting
12 his unassigned status. (*Id.*). Armentero alleges that Scavetta and Delapp conspired to
13 produce a false report. (*Id.*).

14 In August and September of 2007, Armentero wrote two letters to Defendant Sisto
15 regarding his medically unassigned status and the disciplinary notices that he received. (*Id.*
16 at 23-24). On October 4, 2007, Defendant Rodriguez replied to Armentero's first letter,
17 summarizing Dr. Traquina's findings from the September 25, 2007 interview. (*Id.*, Exh. C).
18 Then, on November 26, Sisto replied to Armentero's second letter, inviting Armentero to use
19 the inmate appeal process to resolve any dissatisfaction with his disciplinary hearing. (*Id.*
20 at 24).

21 **IV.   Failure to State a Claim**

22 42 U.S.C. § 1983 provides a cause of action against persons acting under color of state
23 law who have violated rights guaranteed by the United States Constitution. *See Buckley v.*
24 *City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995); *Demery v. Kupperman*, 735 F.2d 1139,
25 1146 (9th Cir. 1984). To state a valid claim for relief under § 1983, a plaintiff must allege
26 that he suffered a specific injury as a result of a defendant's specific conduct and show an
27 affirmative link between the injury and that defendant's conduct. *See Rizzo v. Goode*, 423
28 U.S. 362, 371-72, 377 (1976).

- 4 -

**A.     Pleading Standard**

*Pro se* pleadings are to be liberally construed. *Hains v. Kerner*, 404 U.S. 519, 520-21 (1972). Nonetheless, a *pro se* plaintiff must satisfy the pleading standard set forth in the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In addition,"[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If the Court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend his complaint. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*).

**B.     Eighth Amendment**

Armentero claims that the defendants violated the Eighth Amendment prohibition against cruel and unusual punishment. His Eighth Amendment claim is presumably a claim of inadequate medical care. Armentero fails to state an Eighth Amendment claim against any of the defendants.

To constitute cruel and unusual punishment under the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A prison official violates the Eighth Amendment when the official acts with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The medical need alleged "must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). Factors indicating a serious medical need include: (1) whether a reasonable doctor would consider the condition "worthy of comment or treatment"; (2) whether the condition "significantly affects an individual's daily activities;"

and (3) whether the condition involves "chronic and substantial pain." *Lopez*, 203 F.3d at 1131.

Deliberate indifference is a subjective standard: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834. In the medical context, the plaintiff must show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1097 (9th Cir. 2006) (citation omitted). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" *Lopez*, 203 F.3d at 1131.

"[A] mere 'difference of medical opinion is insufficient, as a matter of law, to establish deliberate indifference.' Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health.'" *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996)).

Taken in the light most favorable to the plaintiff, the Complaint alleges a serious medical need. Armentero alleges that he had a chronic condition, arthritis in his knee, that limited his mobility and caused him pain. This condition was significant enough that a physician at North Kern State Prison had noted that he should be medically unassigned. The Complaint falls short, however, of meeting the requisite standard for deliberate indifference.

Far from demonstrating deliberate indifference to his serious medical needs, Armentero alleges that he was interviewed and examined by several prison physicians both before and after his assignment to ABE-1.115 and August 6, 2007 injury. There was no significant delay in medical treatment; Armentero was seen by Dr. Rohrer on the day of his fall, less than a week after he was first scheduled to report to Adult Basic Education. Armentero has alleged, at best, a difference of medical opinion between the physicians at North Kern State Prison and those at CSP-Solano, who found that he was not mobility

1  impaired and that his physical examination was "unremarkable." The exhibits Armentero
2  submitted in his administrative appeals and attached to his complaint further reveal that he
3  was evaluated at Folsom State Prison before arriving at CSP-Solano. The documentation
4  from Folsom State Prison states that his "physical examination or other objective data does
5  not support claimed disability." Armentero does not allege that the defendant physicians'
6  actions represent a medically unacceptable choice made in conscious disregard of his health.

7  Armentero also fails to state a claim against other prison officials. While prison
8  officials may not "ignore[] the instructions of the prisoner's treating physician or surgeon,"
9  *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999), Armentero's complaint
10 indicates that the defendants complied with the most recent physicians' determinations that
11 he did not need to be medically unassigned. In light of the materials attached to his
12 complaint, Armentero does not state a plausible claim that the other prison officials' action
13 – refusing to grant him an exemption from assignment to Adult Basic Education – amounts
14 to an intentional interference with prescribed medical treatment in violation of the Eighth
15 Amendment.

16     **C.**    **Fourteenth Amendment**
17         i. Due Process

18 Armentero claims that the defendants violated the Due Process Clause of the
19 Fourteenth Amendment. His due process claims are presumably based on the denials of his
20 various prison grievances and appeals. Armentero fails to state a claim under the Due
21 Process Clause.

22 The Due Process Clause protects prisoners from being deprived of liberty without due
23 process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Due Process Clause
24 may protect liberty interests created by state law, when the prisoners' interests involve
25 "freedom from restraint [that] . . . imposes atypical and significant hardship on the inmate
26 in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484
27 (1994). In determining whether a hardship is atypical and significant, a court looks to "1)
28 whether the challenged condition . . . comported with the prison's discretionary authority;

2) the duration of the condition and the degree of the restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (citing *Sandin*, 515 U.S. at 486-87). Here, the "restraint" involved, Armentero's assignment to ABE-1.115, can hardly be considered atypical or significant.

Armentero also makes several bare allegations that officials "simply lied" in their responses to his appeals. Even assuming some impropriety took place, however, there is no protected liberty interest in the proper "processing of [] appeals, . . . because inmates lack a separate constitutional entitlement to specific prison grievance procedure." *Ramirez*, 334 F.3d at 860 (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)). Accordingly, Armentero fails to state a claim under the Due Process Clause of the Fourteenth Amendment.

    ii. Equal Protection

Armentero also claims that the defendants violated the Equal Protection Clause of the Fourteenth Amendment. It is unclear, however, on what basis Armentero rests his equal protection claims, and no plausible basis is apparent on the face of his complaint. Thus, Armentero fails to state a claim under the Equal Protection Clause of the Fourteenth Amendment.

  **D.**  **First Amendment**

Armentero alleges that Dr. Traquina's recommendation that he be transferred to the CMF-Vacaville was retaliatory, in violation of the First Amendment. As explained below, Armentero fails to state facts sufficient to state a claim against Dr. Traquina under the First Amendment.

There is a First Amendment right to petition the government through prison grievance procedures. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). In general, prison officials may not "transfer an inmate to another prison in retaliation for the inmate's exercise of his First Amendment right[s]." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). A First Amendment retaliation claim consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

1  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,
2  and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes*, 408
3  F.3d at 567-68 (citation omitted).
4        First, Armentero fails to allege that his transfer to CMF-Vacaville has had a chilling
5  effect on the exercise of his First Amendment rights. Indeed, since he was transferred,
6  Armentero has pursued several lawsuits against prison officials at various facilities in which
7  he has been housed.
8        Second, Armentero fails to allege that Dr. Traquina's recommendation lacked a
9  legitimate institutional goal. Armentero alleges that he was initially transferred to CSP-
10 Solano for the same reasons stated in Dr. Traquina's recommendation for transfer to CMF-
11 Vacaville: the transferor prison facility could better accommodate his medical restrictions.
12 Although Armentero initially was transferred to CSP-Solano for its relatively level ground,
13 as demonstrated by his fall on the hill and his resulting injury, CSP-Solano was not an
14 appropriate facility. Although Armentero's complaint includes a conclusory statement that
15 CMF-Vacaville is "more restrictive," presumably because it is a "higher security level"
16 prison, Armentero does not allege that CMF-Vacaville is equally or more hilly or otherwise
17 medically inappropriate. He therefore fails to state a claim against Dr. Traquina for violation
18 of the First Amendment.

19 **V.    Leave to Amend**

20       For the foregoing reasons, Armentero's complaint will be dismissed for failure to state
21 a claim. As Armentero's complaint could be cured by the allegation of other facts, however,
22 the Court grants Armentero leave to amend his complaint. *See Lopez*, 203 F.3d at 1129.
23 Within forty-five (45) days, Armentero may submit an amended complaint on the form
24 provided with this Order.
25       Armentero must clearly designate on the face of the document that it is the "First
26 Amended Complaint." The amended complaint must be retyped or rewritten in its entirety
27 on the form provided with this Order and may not incorporate any part of the original
28 Complaint by reference. An amended complaint entirely supersedes the original complaint.

*Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  After amendment, the Court will treat an original complaint has nonexistent.  *Id*.  Any cause of action that was raised in the original complaint is waived if it is not raised in a first amended complaint.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

**VI.    Warnings**

    **A.    Address Changes**

Armentero must file and serve a notice of a change of address in accordance with Rule 83-182(f) and 83-183(b) of the Local Rules of Civil Procedure.  Armentero must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

    **B.    Copies**

Armentero must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5-133(d)(2).  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

    **C.    Possible "Strike"**

Because the Complaint has been dismissed for failure to state a claim, if Plaintiff fails to file an amended complaint correcting the deficiencies identified in this Order, the dismissal will count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). Under 28 U.S.C. § 1915, a prisoner may not bring a civil action *in forma pauperis* "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it was frivolous, malicious, or fails to state a claim upon which relief may be granted, unless a prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

    **D.    Possible Dismissal**

If Armentero fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik*, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

1 **Accordingly,**

2 **IT IS HEREBY ORDERED THAT:**

3     (1)    Plaintiff's Application to Proceed *In Forma Pauperis* is granted pursuant to 28 U.S.C. § 1915(a)(1).

5     (2)    Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action pursuant to 28 U.S.C. § 1915(b)(1). All fees must be collected and paid in accordance with this Court's order to the California Department of Corrections, which will be filed concurrently with this Order.

9     (3)    Plaintiff's Complaint (Dkt. #1) is dismissed for failure to state a claim. Plaintiff has **45 days** from the date this Order is filed to file an amended complaint in compliance with this Order.

12     (4)    The Clerk of the Court shall send Plaintiff a Prisoner Complaint form along with this order.

14     (5)    If Plaintiff fails to file an amended complaint within 45 days, the Clerk of the Court shall, without further notice, enter a judgment of dismissal of this action with prejudice that states that the dismissal counts as a "strike" under 28 U.S.C. § 1915(g).

17     (6)    The Clerk of the Court shall include with this Order a form for filing an amended civil rights complaint by a prisoner.

20 DATED this 23rd day of November, 2009.

22 /s/ Marsha S. Berzon
MARSHA S. BERZON
United States Circuit Judge, sitting by designation